## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**JASON HEATH, ROBERT G. PIERCE,**
**AURELIA EISENZOPF, on behalf of**
**themselves and all others similarly situated,**

        **Plaintiffs,**

                                     **Case No.:  6:10-cv-344-Orl-JA-KRS**

**v.**

**HARD ROCK CAFÉ INTERNATIONAL**
**(STP), INC., HARD ROCK CAFÉ**
**INTERNATIONAL (USA), INC.,**
**HARD ROCK CAFÉ INTERNATIONAL**
**(ORLANDO), INC., HARD ROCK CAFÉ**
**INTERNATIONAL (HOLLYWOOD), INC.**
**HARD ROCK STADIUM TENANT, INC.,**

        **Defendants.**

_____/

## DEFENDANTS' OPPOSITION TO PLAINTIFFS'  MOTION TO ALLOW NOTICE TO BE SENT TO POTENTIAL PLAINTIFFS INFORMING THEM OF THEIR RIGHT TO OPT-IN TO THIS CASE UNDER THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 216(b)

The Defendants ("Hard Rock") submit the following Opposition to the Plaintiffs' Motion

to Allow Notice to be Sent to Potential Plaintiffs Informing Them of Their Right to Opt-in to

This Case Under the Fair Labor Standards Act, 29 U.S.C. § 216(b) (the "Motion") (Doc. No. 14).

## INTRODUCTION

The Plaintiffs, by requesting nationwide notification, seek an extraordinary application of

federal judicial power.  They ask this Court to use its compulsory process to assist them in

locating thousands of non-parties – who worked for different managers, in different cafés,

spanning different regions, at different times, with different policies and practices in place – and

obtaining their consents to join this purported collective action under the Fair Labor Standards Act ("FLSA"). There is no basis for such a remarkable exercise of this Court's power.

The Plaintiffs have not shown, and cannot show, that they and their proposed nationwide class are similarly situated. Indeed, they have offered no proof (as they must) of a uniform corporate policy of tip credit violations or widespread wrongdoing. Since 2008, Hard Rock has employed over 4,000 servers at its 44 cafés in the United States, spanning eight regions and 28 states. These servers, in turn, worked for over 100 different managers, who operate their cafés differently. Yet, the Plaintiffs' affidavits supporting nationwide notice come from only a handful of people who worked at five cafés: Orlando, Florida; Boston, Massachusetts; Foxwoods, Connecticut; San Diego, California; and Hollywood, California. By the Plaintiffs' own admission, one of the named Plaintiffs (Robert Pierce) has no claim for tip credit violations under the FLSA because he was employed in San Francisco, California where minimum wage was paid and no tip credit was taken. Similarly, two of the affiants (who have not opted-in to the lawsuit) also describe practices at Hard Rock locations in California, where Hard Rock paid employees the full minimum wage and did not claim the tip credit on the employees. These are just some of the many fatal flaws in the Plaintiffs' Motion.

Even at this stage of the proceedings, where a more lenient standard is applied, it is clear that there are fundamental, material differences between the Plaintiffs' overtime claims and the potential claims of their proposed nationwide class. It is likewise clear that the Plaintiffs' requested notice would disrupt Hard Rock's business and seek to entice individuals who have <u>no possible claim to join this lawsuit</u>, which would undoubtedly drive up Hard Rock's defense costs and position the Plaintiffs' counsel to use such costs as a bargaining chip to leverage a hefty settlement. It is not this Court's responsibility, nor within this Court's authority, to help the

Plaintiffs cast a nationwide net to bring people into this lawsuit when the Plaintiffs' claims are unique to them and share no common thread with the thousands of others who worked at differently run cafés located across the United States.  To the contrary, it would be a tremendous waste of this Court's and the parties' time and resources to notify a large, diverse nationwide class, and to conduct discovery in connection with each nationwide class member's discrete claims, only to later determine that this litigation should not proceed as a collective action because the nationwide class members are not, as we know now, similarly situated. Consequently, the Plaintiffs' Motion should be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

## I.    HARD ROCK

Hard Rock is a group of entertainment and leisure companies operating cafés and hotels throughout the United States and around the globe.  <u>See</u> Declaration of Kim Creighton, Vice President of Human Resources of Hard Rock Café International (U.S.A.), Inc. , ¶ 2, attached as Exhibit A.[1]  Hard Rock's stated policy is to comply with all federal and state laws, including the FLSA.  <u>Id.</u> ¶ 3.

Hard Rock currently has eight regions or areas of operation (Southeast, Northeast, Florida, New York, Southwest, Northwest, Nevada, and Central).  Each region is composed of three to seven cafés located within the particular region.  The regions or areas are supervised by an Area Vice President and a Director of Operations.  Cafés within a region are owned (or held)

---

[1] Ms. Creighton has worked extensively with Hard Rock's management team, its Human Resources Department, and General Managers (and other lower-level managers) of various cafés in the United States throughout the timeframe relevant to this case.  <u>Id.</u> ¶ 2.  As a result, she is familiar with how Hard Rock cafés operate around the country within the various regions and areas of operation.  <u>Id.</u>

by different corporate entities, and there are currently five different corporate entities (the Defendants named in the lawsuit caption above) that own at least one of the 44 cafés.  Id. ¶ 6.

Currently, there are 44 Hard Rock cafés located across the country in 28 states.  Each café is managed by a General Manager, and each café operates independently of other cafés, regardless of their particular location or area.  Id. ¶ 4.  Employees typically work at only one café.  Id.  In addition to the General Manager, each café has anywhere from one to three Assistant General Managers responsible for different portions of the café's operation – typically, retail, dining room, and special events/banquets.  Id.  Each café also has several other lower-level managers responsible for different portions of the café's operations, including the kitchen, dining room, bar, retail, and banquet/events.  Id.  How the cafés are operated and staffed, how the kitchen is managed, and what particular roles or job functions an employee performs are determined by the managers or General Managers at each location, and differ between the various cafés.  Id.

## II.  HARD ROCK SERVERS AND EXPEDITORS

Since 2008, Hard Rock has employed approximately 4,000 servers at its cafés in the United States.  Each of Hard Rock's cafés can be (and most are) staffed differently.  Id. ¶ 8.  For example, some of the cafés use "Rockers" -- servers who are in charge of each shift -- while others do not.  The duties of Rockers vary per location and per shift, but they often are used to be the "go-to" person on a shift and always know where the manager on duty can be found in an emergency.  They can also be utilized to train new hires, or to handle large groups, or special customer arrangements.  Rockers typically receive a free meal for the shift they are identified as the Rocker.  Rockers are classified as servers, but their duties may differ from a typical server working the same shift.  Id. ¶ 9.

Hard Rock also has a category of employees referred to as "expeditors" or "expos." Expos generally come from the server ranks. That is, expos are often servers who go through special training to work in the expo position. Id. Depending on the café, among other things, expos assemble the customer's order, put final touches on food, put the steak knife on the plate, garnish the plate with lettuce and tomato and, in many instances, run food to customers. In most cafés, a server must be "expo-certified" to work as an expo. Id. Depending on the volume of the café's business, the lay-out of the café's kitchen, the culture of the café, and the individual expo's skills and personal traits, expos have varying degrees of interaction with customers. In some cafés, expos regularly run food to customers. In other cafés, expos entertain customers who dine at the open kitchen counter with percussion performances, songs, and the like. Id.

Critically, there is no uniformity as to the manner in which expos are used in cafés, when they are used at all. For example, many cafés, based on the directions of the General Manager and other lower-level managers, do not use expos. Other cafés use expos, but they are paid a high hourly rate and do not receive tips. Still other cafés, again at the direction of the General Manager or a lower-level manager, use expos only on some work days or only during a portion of some works days during busy times. Id. ¶ 10.

## III.   TIP-SHARING BETWEEN SERVERS AND EXPOS

Hard Rock requires each employee, including General Managers, to execute acknowledgment forms requiring the proper method of reporting tip income for tax purposes. See id.; Exhibit A. This mandatory acknowledgment form was the only nationwide policy regarding employee tips in effect during the timeframe relevant to this litigation. Importantly, as it relates to this case, Hard Rock has never had a uniform nationwide policy requiring servers to share their tips with expos. Nor did Hard Rock require on a nationwide level the operation of a

mandatory tip pool, or retain any of its servers' tips for itself.  At some cafés, however, servers had tip-sharing agreements with other employees, whereby the server "tipped out" employees who helped the server in the performance of his or her duties.  <u>Id.</u> ¶ 5.  Although Hard Rock had no uniform corporate policy on the practice, in 2008, Hard Rock enacted a company-wide policy that expos could not receive tips from servers or any other employees.  Whether a server tipped out an expo was not managed at the national – or even the regional – level.  Instead, it was managed and controlled at the café level, <u>by the servers themselves</u>.  As a result, even within the same region, some cafés had servers who shared tips with expos while other cafés did not.  <u>Id.</u> ¶ 10.  The manner in which servers, expos, and other employees are paid, who is tipped out (and how much), what hours an employee works on a weekly or daily basis, and whether an employee holds, in the same week, one, two, or more positions, differs between cafés.  <u>Id.</u> ¶ 5.  Moreover, in those cafés in which employees tip-out or share their tips, the amount of an employee's tip-out or shared tips varies by café, by the server tipping out, and by the position the employee holds. On one day, an employee could work as a server and tip out an expo and a bartender, and on another day, during the same week, the same employee could work as an expo and be tipped out by a server.  Currently, there are no cafés where expos receive tips from servers.  <u>Id.</u> ¶ 11.

Significantly, Hard Rock's managers did not (and still do not) get involved in determining how tips are shared or in setting the percentage of the tip shared.  <u>Id.</u>    In addition, Hard Rock pays different minimum wages depending on the state or location of a café.  In some states, such as California, Minnesota, and Nevada, Hard Rock pays full minimum wage to servers, bussers, and other tipped employees, and does not take a tip credit.  <u>Id.</u>

## IV.    **THE PLAINTIFFS AND THEIR AFFIANTS**

The Plaintiffs and their affiants are current and former Hard Rock servers and bartenders.

**A.**      **Plaintiff and Affiant Jason Heath** ("Heath") was employed by Hard Rock as a server and bartender at the cafés located in  Foxwoods, Connecticut and Boston, Massachusetts, from  approximately 2004 to 2008.  (Heath Affidavit ¶ 2, Doc. No. 14-1).  Other than his unique experience at the Foxwoods and Boston cafés,  Heath has not offered any evidence of the expo tip-out practices at Hard Rock's other 42 locations.

**B.**      **Plaintiff Robert Pierce** ("Pierce") was employed by Hard Rock as a server and worked only at the café located in  San Francisco, California, from  approximately 2008 to the present.  (Am. Compl. ¶ 5, Doc. No. 10).  Other than the San Francisco café, Pierce has not offered any evidence of the tip-out practices at Hard Rock's other 43 locations.  As an employee in California, Pierce was always paid above the minimum wage, and Hard Rock did not take a tip credit on Pierce.

**C.**      **Plaintiff Aurelia Eisenzopf** ("Eisenzopf") was  employed by Hard Rock as a server at the café located in  Boston, Massachusetts from June 2007 to October 2008.  She is currently employed as a server at the café in Orlando, Florida.  (Am. Compl. ¶ 6, Doc. No. 10).  Other than the  Boston and Orlando  cafés,  Eisenzopf  has not offered any evidence of the tip-out practices at Hard Rock's  other 42 locations.

**D.**      **Affiant Maggie Nasinnyk** ("Nasinnyk") was employed by Hard Rock as a server at the café located in  Boston, Massachusetts from  approximately June 2004 to December 2005.  Nasinnyk also was employed as a server at the café in San Diego, California from January 2006 to May 2007.  (Nasinnyk Aff. ¶ 2, Doc. No. 14-1).  Other than the Boston and San Diego cafés, Nasinnyk has not offered any evidence of the tip-out practices at Hard Rock's other 42 locations.  Nasinnyk was employed at the Boston café over four years ago, well outside the maximum statute of limitations for bringing an FLSA claim.  In addition, during the time she

was employed by Hard Rock in California, Nasinnyk was always paid above the minimum wage, and Hard Rock did not take a tip credit on Nasinnyk.

     **E.**    **Affiant Christopher Teachout** ("Teachout") was employed by Hard Rock as a server at the café located in Boston, Massachusetts, from approximately August 2005 to April 2007 and at the café in Hollywood, California, from approximately June 2007 to August 2007. (Teachout Aff. ¶ 2, Doc. No. 14-1).   Other than the Boston and Hollywood, California cafés, Teachout has not offered any evidence of the tip-out practices at Hard Rock's other 42 locations. While an employee in California, Teachout was always paid above the minimum wage, and Hard Rock did not take a tip credit on Teachout.

     **F.**    **Affiant Bobbee Byard ("Byard")** was employed by Hard Rock as a bartender at the café located in Boston, Massachusetts, from approximately July 2007 to March 2008. (Byard Aff. ¶ 3, Doc. No. 14-1).   Other than the Boston café, Byard has not offered any evidence of the tip-out practices at Hard Rock's other 43 locations.

## V.   <u>THE PLAINTIFFS' LAWSUIT</u>

     This lawsuit asserts claims under the FLSA and various state law claims which are not at issue in the Plaintiffs' Motion.  (Am. Compl., Doc. No. 10).   Specifically, the Plaintiffs claim they have been paid less than minimum wage and have had to pay over a portion of their tips to non-wait staff employees.  As a result, the Plaintiffs maintain that Hard Rock was not entitled to take the tip credit against the minimum wage under § 203(m) of the FLSA.  (<u>Id.</u> ¶ 1).  Since the lawsuit was filed, 28 current and former Hard Rock employees (comprising less than one percent of the number of employees in the Plaintiffs' proposed class) have filed Consents to Join.  (Doc. Nos. 11-1, 13-1, and 17-1).  On May 6, 2010, before Hard Rock responded to the Amended Complaint and before discovery commenced, the Plaintiffs filed their Motion to Allow Notice,

seeking authorization to issue notice of this lawsuit to all Hard Rock wait staff employees nationwide.  (Doc. No. 16).  For the reasons set forth below, the Plaintiffs' Motion should be denied.

## ARGUMENT

I.   **THE PLAINTIFFS HAVE FAILED TO SHOW THAT THEY ARE SIMILARLY SITUATED TO ALL POTENTIAL NATIONWIDE CLASS MEMBERS.**

Generally speaking, courts do not possess the absolute power to authorize, and plaintiffs do not have the unqualified right to send, notice to potential class members in every collective action case arising under the FLSA.  See 29 U.S.C. § 216(b); Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 173-74 (1989).  Rather, courts, like the attorneys who appear before them, have a "responsibility to refrain from stirring up unwarranted litigation."  Lentz v. Spanky's Restaurant II, Inc., 491 F. Supp. 2d 663, 666 (N.D. Tex. 2007) (internal quotations omitted).  "Further, employers should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff[s] at the employer's expense."  Id.  (citations omitted).  Thus, notice is appropriate only if the Plaintiffs demonstrate that all members of the potential class are similarly situated:

> [Section 216(b) of the FLSA] permits a plaintiff to bring a collective action on behalf of himself and others similarly situated, provided that the similarly situated plaintiffs opt in to the action. District courts have discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to [Section] 216(b) of the FLSA . . . **The power to authorize must, however, be exercised with discretion and only in appropriate cases.**

Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358, 361 (M.D. Ala. 1999) (emphasis added) (citing Haynes v. Singer Co., 696 F.2d 884, 886 (11th Cir. 1983)); see also Grayson v. K-Mart Corp., 79 F.3d 1086, 1097 (11th Cir. 1996) (recognizing that plaintiff, at all times, bears burden of meeting similarly-situated requirement), cert. denied, 519 U.S. 982 (1996); Brooks v. Bellsouth

Telecomms., Inc., 164 F.R.D. 561, 567 (N.D. Ala. 1995), aff'd, 114 F.3d 1202 (11th Cir. 1997) (same).

     This requirement is not a superficial one.[2]  Courts have not hesitated, in cases such as this one, to deny plaintiffs' requests for notice when the plaintiffs fail, among other things, to present proof of a uniform corporate practice encouraging wrongdoing.[3]  See Harper, 185 F.R.D. at 362-63 (claims were not appropriate for class certification absent evidence that putative class members were subjected to common set of illegal employment practices or policies).  In such cases, courts have recognized that class treatment would be unmanageable and inappropriate because individualized determinations would have to be made, leading to the inescapable conclusion that the lawsuit would disintegrate into a series of mini-trials on the claims of each potential class member.  See, e.g., Ray v. Motel 6 Operating, Ltd P'ship, No. 3-95-828, 1996 WL 938231, at *4 (D. Minn. Mar. 18, 1996) (refusing to certify collective action due to differences among proposed class members and "significant manageability problems inherent in

---

[2]  The Eleventh Circuit has recommended a two-tiered approach, at the notice stage and the decertification stage, in determining whether to certify collective actions under Section 216(b):

     The first determination is made at the so-called "notice stage."  At the notice stage, the district court  makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members . . . The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial.

Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d at 1218 (quoting Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995)).

[3]  While "a unified policy, plan, or scheme of discrimination **may** not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b)," Grayson, 79 F.3d at 1097 (emphasis added), district courts typically require such a showing when exercising their discretionary power in response to a motion seeking nationwide (or even regional) notification.  See, e.g., Harper, 185 F.R.D. at 363.

a trial of 1,000 plus individuals" where proposed class members worked in five different regions, at 39 different properties, in at least 20 different states, and properties varied in size and operation demonstrating a lack of commonality).

Accordingly, even at the notice stage, plaintiffs must come forward with "detailed" and "substantial" allegations that the putative class members were the victims of a single decision or policy and "successfully engage defendants' affidavits to the contrary." Grayson, 79 F.3d at 1097; see also White v. Osmose, Inc., 204 F. Supp. 2d 1309, 1309, 1314 (M.D. Ala. 2002) (to satisfy burden of showing that plaintiff and putative class members are similarly situated, plaintiff must make some "showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond mere facts of job duties and pay provisions;" otherwise "it would undoubtedly present ready opportunity for abuse").

Here, the Plaintiffs define the purported nationwide opt-in class as those Hard Rock employees who "have been paid less than the federal minimum wage and have paid over a portion of their tips to non-wait staff employees." (Am. Compl. ¶ 7, Doc. No. 10). Remarkably, and tellingly, one of the three named Plaintiffs (Pierce) and two of the five affiants (Nasinnyk and Teachout) describe employment practices that do not even fall within this definition. In sum, the Plaintiffs and their affiants offer (albeit very limited) evidence of server tip activity at six cafés, three of which are located in California, where no tip credit was taken by Hard Rock and servers were at all times paid the full, legally-required minimum wage. This evidence is legally inadequate to establish a nationwide class of similarly-situated servers.

A.    **The Plaintiffs Have Failed To Present Any Evidence Of A Nationwide Corporate Practice Of Tip Credit Violations.**

Courts routinely refuse to authorize nationwide notification where, as here, the plaintiffs fail to present evidence of a uniform corporate practice of violating the FLSA or widespread

wrongdoing.  See Harper, 185 F.R.D. at 362-63.  In Harper, for example, the plaintiffs sued the defendant, claiming it violated the FLSA, and seeking to notify all other hourly wage employees at the defendant's restaurants located throughout the Southeast.  Id. at 360-61.  To support their request for regional notification, the plaintiffs, seven hourly-wage workers working at one of the defendant's restaurants, generally claimed that the FLSA violations they witnessed at their restaurant were present at every other restaurant owned and operated by the defendant.  Id. at 362.  They failed, however, to offer any evidence, other than their own vague assertions, to support this claim.  Id. at 363.  In refusing to allow notice to all hourly wage employees at the defendant's restaurants located throughout the Southeast, the court found that, although there was some evidence of alleged wrongdoing at the restaurant at which the plaintiffs worked, there was a total dearth of evidence for the claim of wrongdoing at the defendant's other restaurants:

> The court notes that Plaintiffs have not presented any evidence to support their allegation that Defendant's corporate-wide incentive pay plan for its managerial employees resulted in violations of the minimum wage or overtime provisions of the FLSA.  Plaintiffs, furthermore, have not presented any evidence that such an incentive plan even exists.  Nor have Plaintiffs presented evidence of a uniform corporate practice discouraging overtime . . . **The class of "hourly wage employees" which Plaintiffs seek to represent contains individual employees who have worked at different restaurants, in different states, for different managers, and, most likely, in quite different working conditions** . . . The court cannot, on the basis of the evidence presented, find these individuals to be "similarly situated" to the named, individual Plaintiffs or allow even the conditional certification or provision of notice to such a huge, diverse class.

Id. (emphasis added); see also Haynes, 696 F.2d at 887 (affirming district court's refusal to authorize class notice where plaintiff's attorney offered only unsupported allegations of widespread FLSA violations); Tucker v. Labor Leasing, Inc., 872 F. Supp. 941, 948 (M.D. Fla. 1994) (limiting notice to only those potential class members who worked at plaintiffs' terminal because plaintiffs failed to show that they and those who worked at other terminals were

similarly situated); <u>Brooks</u>, 164 F.R.D. at 569 (finding that employees in nine states, working in separate departments, and under different supervisors, were not similarly situated); <u>Belcher v. Shoney's, Inc.</u>, 927 F. Supp. 249, 252 (M.D. Tenn. 1996) (limiting notice to only those potential plaintiffs who worked at the concept restaurants at which the plaintiffs worked); <u>Freeman v. Wal-Mart Stores, Inc.</u>, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (denying plaintiff's motion for approval of collective action where he failed to present any evidence that his duties were generally comparable to those whom he sought to represent).

Similar to the plaintiffs in <u>Harper</u>, the Plaintiffs in this case are attempting to represent approximately 4,000 current and former servers who worked at 44 cafés, located in 28 different states, for more than 100 different managers.  They have not, however, offered a shred of evidence suggesting that any alleged wrongdoing took place on such a large scale over such a vast geographic territory, much less any uniformity in any alleged wrongdoing.  Indeed, there are several admitted and patent flaws in the allegations contained in the Amended Complaint, affidavits, and opt-in notices that undermine the issuance of nationwide notice.  For instance, as emphasized above, the affidavits submitted in support of the Plaintiffs' Motion to Allow Notice only address the alleged illegal tip-credit procedures at five cafés.  By the Plaintiffs' own concession, "two of the affidavits describe practices at Hard Rock locations in California, where employers are not allowed to pay a lower tipped minimum wage and **<u>where employees therefore would not have a claim under the FLSA</u>**."  (Motion at 8 n.3, Doc. No. 14) (emphasis added).  Likewise, Plaintiff Robert Pierce also was paid above the minimum wage when he worked for Hard Rock in San Francisco, California, and Hard Rock did not take the tip credit on Mr. Pierce.  Therefore, Mr. Pierce has **<u>no claim under the FLSA</u>** and cannot be similarly-situated to the class members he purports to represent.  It is of some moment that Hard Rock

cafés in Nevada and Minnesota similarly do not use a tip credit minimum wage for servers and do not allow tip-outs to expos. Thus, employees in cafés located in those states, like the employees in California, as a matter of admitted fact, and law, can have no claims against Hard Rock, and, logically, cannot be similarly situated to other employees working in different states under different pay practices.

Additionally, the opt-in consent forms filed in this action do not satisfy the Plaintiffs' burden of demonstrating they are similarly situated to the proposed nationwide class. The forms, all of which are identical, are conclusory and devoid of the substantial and detailed allegations necessary to warrant nationwide notice. Most of the opt-ins worked at just two cafés: Orlando (19) and Foxwoods (8). There is only one opt-in each from the cafés in Boston, Maui, New Orleans, Pittsburgh, Myrtle Beach, and Hollywood, California. (Doc Nos. 11-1, 13-1, and 17-1).[4] Like the bare allegations in the Amended Complaint and the Plaintiffs' supporting affidavits, the opt-in consent forms fail to demonstrate that all of the servers in the same café, much less all 4,000 servers from 44 different cafés across the United States, worked under the same conditions and were subjected to uniform illegal tip practices or other widespread wrongdoing.[5] Indeed, the Plaintiffs cannot make such a showing because any alleged illegal tip credit practices, if they existed at all, were not carried out by central management, or through a uniform policy or practice. Rather, to the extent any improper tip credit policies are discovered,

---

[4] There are 28 total opt-ins, some of whom report working in more than one café.

[5] The fact that the Plaintiffs and opt-ins allege they worked as wait staff employees and/or tipped out expos does not meet their burden. Even under a lenient standard, these allegations are insufficient to justify sending notice to a nationwide class. As the court in Harper makes clear, to obtain nationwide notice, the Plaintiffs must present some evidence of a uniform corporate practice of illegal tip credit violations, or widespread wrongdoing. See Harper, 185 F.R.D. at 362-63.

they must have been carried out in a non-uniform, decentralized fashion at the various cafés. (Creighton Aff. ¶¶ 3-4, 10-11). See Ray v. Motel 6 Operating, Ltd P'ship, 1996 WL 938231, at *4 (denying conditional certification where plaintiffs failed to show that alleged illegal overtime plan was carried out through central management; defendant's official written policy required compliance with the FLSA and the illegal scheme, if it existed at all, must have been implemented on a decentralized level).

The Plaintiffs' have failed to demonstrate a single, uniform, nationwide policy of tip credit violations under the FLSA.  Hard Rock, on the other hand, has demonstrated that there was no nationwide uniformity in the use of expos or the way they performed their jobs, there was no nationwide uniformity in whether Hard Rock took the tip credit on servers, and there was no nationwide uniformity on the amount or frequency of tip-sharing between servers and expos. (Creighton Aff. ¶¶ 3-4, 10-11).  The Plaintiffs and their proposed class worked in different regions, for different managers, at different times, when different tip-out procedures and different types of expos were in place from café to café.  As a result, if nationwide notice were authorized, and the claims of the Plaintiffs and their proposed nationwide class were conflated into a single lawsuit, the parties would spend, perhaps, years litigating the unique, highly-detailed claims of each nationwide class member.  This would be untenable and violate controlling legal precedent.  Because the Plaintiffs have failed to show that they and their proposed nationwide class are similarly situated, the Plaintiffs' Motion should be denied.  See Bernard v. Household, Int'l, Inc., 231 F. Supp. 2d 433, 435-36 (E.D. Va. 2002) (denying issuance of notice to employees alleging overtime violations by company with 20 different offices in cities located throughout 15 states because employees failed to demonstrate that employees outside of two Virginia offices were similarly situated); Brooks, 164 F.R.D. at 568

(substantial evidence did not demonstrate that putative class members were similarly situated to support conditional certification because putative members were diverse, located within separate departments, in a company with different supervisors, located across nine states); D'Anna v. M/A-Com, Inc., 903 F. Supp. 889, 893-894 (D. Md. 1995) (denying conditional certification and notice to potential class members because plaintiff did not point to any company plan or policy to target older employees and did nothing more than identify 11 individuals who were over 40 years of age and might have been terminated).

**B.    Considerations of Judicial Economy and Judicial Efficiency Dictate That The Plaintiffs' Motion Be Denied.**

In determining whether employers may properly take the tip credit, courts have placed great significance on whether the tipped occupation entails regular interaction with customers. Specifically, courts look at whether the employees are visible and have contact with patrons such that they have an impact on customer service.  See, e.g., Kilgore v. Outback Steakhouse of Fla., Inc., 160 F.3d 294, 301 (6th Cir. 1998) (although restaurant hosts did not necessarily have direct contact with customers, they had more than "de minimis interaction with customers" so that hosts were permitted to participate in tip pool and employer could lawfully use tip credit). Concomitantly, to join a collective action based on alleged tip credit violations, a plaintiff must demonstrate that his or her experiences are sufficiently similar to the rest of the proposed class. See Aguirre v. SBC Communications, Inc., No. Civ. A. H-05-3198, 2006 WL 964554, at *5 (S.D. Tex. 2006) (denying motion for certification and notice because differences among proposed class would predominate over their similarities and require individual inquiry on employee-by-employee basis).

In this case, the Plaintiffs seek to litigate a mish-mash of claims, none of which have any bearing on their own.  For instance, they seek to litigate the legality of Hard Rock taking the tip

credit on servers, even though numerous cafés did not take the tip credit on servers.  They seek to litigate the legality of whether expos were customarily-tipped wait staff employees, even though some cafés did not employ expos at all and other cafés employed expos who did not receive tips.  They seek to treat all expos and servers similarly when it is demonstrably clear that each store handled the expo-server relationship on an individual basis, and the expos' activities and duties varied among the cafés (if the cafés even had expos in the first place).[6]

Hard Rock expressly refutes any suggestion that there was a nationwide policy concerning the payment of servers, the use or tipping of expos, the particular job duties, and the customer interactions between expos and customers at the nearly four dozen Hard Rock cafés scattered across eight regions and 28 different states.  In their very limited (geographically and substantively) allegations, the Plaintiffs have not demonstrated that they share a common thread with the 4,000 servers who worked at 41 of the 44 Hard Rock cafés in the United States.  Consequently, authorizing the Plaintiffs to send out a nationwide notice is legally unsound and practically unwise.  It virtually guarantees that this Court and the parties will waste valuable time and resources notifying a large, diverse nationwide class, only to determine later that nationwide class members are not, as we know now, similarly situated.

To obtain the sweeping, nationwide notice they seek, it was incumbent upon the Plaintiffs to identify a class that is similarly situated through detailed and substantial allegations and to overcome Hard Rock's evidence to the contrary.  Their showing, however, is legally unavailing and falls woefully short.  Accordingly, the Plaintiff's Motion should be denied.  See

---

[6] Moreover, the claims of all three named Plaintiffs and three of the affiants (Byard, Nasinnyk and Teachout), all of whom worked at one time in the Boston café, may be barred, in whole or in part, by a settlement reached in a prior case involving a non-FLSA claim arising under Massachusetts law.  Different defenses and a different legal analysis would apply to such employees' claims, making their claims (and Hard Rock's defenses) unique and dissimilar to the alleged claims of the proposed class.

Lentz, 491 F. Supp. 2d at 670 (noting there is no clear precedent among the circuits defining expeditors as employees who do not customarily and regularly receive tips and, as a result, it would be improper and unnecessarily burden all parties to force defendants to provide plaintiffs with detailed information on all prior and current employees on a claim that has never been determined to be a violation of the FLSA); see also England v. New Century Financial Corp., 370 F. Supp. 2d 504, 511 (M.D. La. 2005) (employees were not "similarly situated" and conditional certification was not warranted in case involving multitude of different managers and different geographical locations across country; individual inquiries would predominate in case because of different locations, managers, and factual situations involved at each location and, if liability was found, damages would necessarily require a case-by-case inquiry); Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1274-75 (M.D. Ala. 2004) (FLSA action could not proceed as collective action, either nationwide or regionally, because employer's declarations showed store managers' duties were inconsistent with plaintiffs' evidence such that court would have to inquire into daily tasks of each putative class member); Stubbs v. McDonald's Corp., 227 F.R.D. 661, 666 (D. Kan. 2004) (precluding conditional certification of FLSA collective action because plaintiff provided little evidence of how his job duties were similar to those of other employees and employer rebutted presumption that all shared same job duties); Smith v. Tradesmen Intern., Inc., 289 F. Supp. 2d 1369, 1372 (S.D. Fla. 2003) (plaintiffs presented insufficient information to enable district court to decide whether employees were similarly situated to FLSA plaintiff where sole evidence consisted of three identical affidavits by employees who had different job titles and responsibilities, and worked in different geographic locations).[7]

---

[7] In support of their Motion, the Plaintiffs cite to this Court's decision granting conditional certification and authorizing notice to opt-in plaintiffs in Sanchez v. Ocwen, No. 6:06:cv-1811-Orl-28-DAB, 2007 WL 809666, *3 (M.D. Fla. Mar. 15, 2007). Sanchez stands in stark contrast

## II.   **THE PLAINTIFFS' PROPOSED METHOD OF NOTICE IS TOO BROAD.**

Notice to potential FLSA class members must avoid both the appearance of judicial partiality, see Hoffman-La Roche, Inc., 493 U.S. at 174, and the potential for confusing putative class members, see In re Domestic Air Transportation Antitrust Litigation, 141 F.R.D. 534, 533 (N.D. Ga. 1992). Nonetheless, the Plaintiffs urge the Court to approve the issuance of notice to potential plaintiffs "through electronic mail and/or networking websites such as Facebook." (Motion at 11, Doc. No. 14). As argued above, Hard Rock strenuously objects to the issuance of notice in this case. Even if notice were authorized, however, the Plaintiffs' proposed method of notice is far too broad and would be highly prejudicial to Hard Rock's business operations and reputation. Hard Rock does not maintain an employee-only Facebook page, Internet site, or social networking page. Consequently, to allow the Plaintiffs to post material about this lawsuit on the Internet, where it could be viewed by everyone in the world who has access to the Internet, not just the potential plaintiffs who could number in the thousands, would unfairly malign Hard Rock and disrupt its business.

Additionally, serving notice of a collective action by e-mail is inappropriate because of the great potential for the e-mail to be altered, copied, forwarded, and posted on the Internet, resulting in a limitless number of people receiving a distorted, one-sided message about the lawsuit. Furthermore, existing café employees who work as servers do not have a company e-

---

to this case, however, because the defendant did not oppose certification. In addition, unlike the Plaintiffs in this case, who attempt to convert their discrete claims involving a few cafés into a nationwide collective action covering 44 cafés and thousands of potential class members, the plaintiff in Sanchez submitted six affidavits from employees from a single office in Orlando, all of whom alleged they were denied overtime under a uniform policy in place at that location. Therefore, the Sanchez case is not relevant, or even helpful, to the Court's determination in this case. The same is true of this Court's order granting conditional certification and permitting court-supervised notice in Gonzalez v. Go Relax Travel, LLC, No. 6:09-cv-573-Orl-28-KRS, 2009 WL 3817119, *3-4 (M.D. Fla. Nov. 13, 2009), because the putative class consisted solely of sales agents at a single office in Orlando.

mail account, thereby making it impossible for Hard Rock to circulate a uniform e-mail notice to servers via the Company's e-mail system.  Therefore, even if this Court were to authorize the Plaintiffs to notify a class or sub-class of potential plaintiffs about this lawsuit, which it should not, any notice should be sent via first-class mail to the potential class members' last known mailing addresses.  See Clayton v. Velociti, Inc., No. 08-2298-CM, 2009 WL 304190, *3 (D. Kan. Feb. 9, 2009) (plaintiffs' request for notice by e-mail was impracticable, burdensome, and could confuse or mislead potential class members); Hintergerger v. Catholic Health Sys., No. 08-CV-380S, 2009 WL 3464134, *13 (W.D.N.Y. Oct. 21, 2009) (denying request for notification by e-mail due to risks of distortion or misleading notification); Karvaly v. eBay, Inc., 245 F.R.D. 71, 91 (E.D.N.Y. 2007) (e-mail was not adequate substitute for traditional method of notifying prospective class members by first-class mail because "[e-mail] creates risks of distortion or misleading notification that are substantially reduced when first-class mail is used"); Reab v. Electronic Arts, Inc., 214 F.R.D. 623 (D. Colo. 2002) (notice would be given by means of first–class mail only, not via e-mail or posting on website, because e-mail inherently had potential to be copied and forwarded to others via the Internet with commentary that could distort notice approved by court, whereas first class mail ensured that targeted audience received intended notification and maximized integrity of notice process).

## CONCLUSION

The Plaintiffs' Motion should be denied.


s/Kevin W. Shaughnessy
Kevin W. Shaughnessy
Florida Bar No. 0473448
kshaughnessy@bakerlaw.com
Joyce Ackerbaum Cox
Florida Bar No. 0090451

jacox@bakerlaw.com
Marilyn G. Moran
Florida Bar No. 0163813
mmoran@bakerlaw.com
**BAKER & HOSTETLER LLP**
200 South Orange Ave., Suite 2300
Orlando, Florida 32802-0112
Telephone:  (407) 649-4000
Facsimile:  (407) 841-0168

**COUNSEL FOR DEFENDANTS**

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on May 24, 2010, a true and correct copy of the foregoing was filed using the Court's CM/ECF system which will send a copy electronically to Hillary Schwab, Esq., Lichten & Liss-Riordan, P.C., 100 Cambridge Street, 20th Floor, Boston, MA  02114,  and Mary Jill Hanson, Esq., Law Office of Mary Jill Hanson, 301 Ocean Bluffs Boulevard, #306, Jupiter, FL  33477.

s/Kevin W. Shaughnessy
Kevin W. Shaughnessy

026767, 000080, 502883267.1