# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JASON HEATH, ROBERT G. PIERCE,
AURELIA EISENZOPF on behalf of
themselves and all others similarly situated,

**Plaintiffs,**

-vs-                                                    Case No.  6:10-cv-344-Orl-28KRS

HARD ROCK CAFÉ INTERNATIONAL
(STP),  INC., HARD ROCK CAFÉ
INTERNATIONAL (USA), INC., HARD
ROCK CAFÉ INTERNATIONAL
(ORLANDO), INC., HARD ROCK CAFÉ
INTERNATIONAL (HOLLYWOOD), INC.,
HARD ROCK STADIUM TENANT, INC.

                                        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

        This cause came on for consideration without oral argument on the following motion filed

herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' RENEWED MOTION FOR ORDER APPROVING SETTLEMENT OF COLLECTIVE ACTION AND APPROVING NOTICE OF SETTLEMENT AND OPPORTUNITY TO FILE CLAIM FORM (Doc. No. 65)** |
| **FILED:** | **September 30, 2011** |

## I.  PROCEDURAL HISTORY.

This case was brought by Plaintiff Jason Heath and several other opt-in plaintiffs under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*  Heath, thirteen opt-in Plaintiffs and Defendants seek the Court's approval of their settlement agreement covering employees who worked at the Defendants' Foxwoods Casino location in Mashantucket, Connecticut, certification of a collective action and approval of notice to the members of the collective action.  Under the proposed settlement agreement, Defendants would pay up to $50,000.00 to settle the case, including $16,667.00 in Plaintiffs' attorneys' fees and costs and a $1,000.00 incentive payment to Heath.

After an order requiring additional information, Doc. No. 64, Plaintiffs filed the present renewed motion supported by a settlement agreement signed by the Heath and thirteen opt-in Plaintiffs, Jarraid Belanger, Tim Dilallo, Jennifer Lussier (formerly Branchaud), Stacy Ferguson, Jason Heath, Joseph Harry Barnaby, Brock Arsenault, Jennifer Selvido, Gordon Johnson, Paul Neville, Elizabeth Pignatara, and Allison Tapia (formerly Moore) and Amber Safari (collectively the Signatory Plaintiffs).[1]  Notably, the settlement agreement is not signed by any representative of Defendants or by counsel for the parties.

---

[1] Plaintiffs' counsel indicated that opt-in Plaintiffs Sarah Jane Waltman and Amber Safari had not returned signed copies of the settlement agreement as of the filing of the renewed motion.  Doc. No. 65 at 2 n. 2.  On October 26, 2011, Plaintiffs' counsel filed the signature page of the settlement agreement signed by Safari.  Doc. No. 66-3.  As of the writing of this Report and Recommendation, a settlement agreement signed by Waltman had not been filed.  **Within the time permitted for filing objections to this Report and Recommendation, counsel for Plaintiffs shall either file a settlement agreement signed by Waltman or a motion to withdraw Waltman's appearance as a Plaintiff in this case and a request to include her as a member of the prospective settlement class who must timely submit a Claim Form.**

The motion is also supported by the Declaration of Hillary Schwab, one of the attorneys for Plaintiffs, and supporting time records, Doc. No. 65-2, a proposed Notice of Settlement and Opportunity to File a Claim, Doc. No. 65-3, and a Proposed Order Approving Settlement of Collective Action and Approving Notice of Settlement, Doc. No. 65-4.

The parties ask that the Court find that the settlement agreement is a fair and reasonable resolution of a bona fide dispute under the FLSA, certify a settlement class and permit notice to be given to individuals to give them the option to join the class. The presiding District Judge has referred to the motion to the undersigned for issuance of a Report and Recommendation.

## II.     THE SETTLEMENT AGREEMENT.

The settlement agreement states that Signatory Plaintiffs were represented by counsel and that they executed the settlement agreement with the consent and advice of counsel. Doc .No. 65-1 at 14. Defendants were also represented by counsel.

Under the settlement agreement, Defendants will pay $50,000.00 as the "Gross Settlement Amount" to a settlement administrator. Doc. No. 65-1 at 5. Defendants will also separately pay the costs of the settlement administrator. *Id.* The gross settlement amount will be used to pay the claims of "Qualified Claimants," any incentive payment to Plaintiff Heath approved by the Court, and all attorney's fees, costs and litigation expenses approved by the Court. *Id.* at 8. The remaining amount, referred to as the "Revised Gross Settlement Amount," will be allocated to the

settlement class members in proportion to the payments allocated to them as set forth in Exhibits B and C of the settlement agreement, Doc. Nos. 66-1, 66-2. *Id.* at 10.[2]

The settlement agreement contemplates that members of the settlement class who have not filed consents to join the present case will have to submit a claim form to the settlement administrator by a claim bar date to be eligible to receive a distribution from the Revised Gross Settlement Amount. Doc. No. 65-1 at 10-11. The settlement administrator will issue checks to the Signatory Plaintiffs and to settlement class members who timely file a claim form (collectively the Qualified Claimants). *Id.* at 11. Each settlement check must be negotiated within 120 days or the check will be voided. *Id.* at 12. Any remaining funds, including the funds for voided checks, revert to Defendants. *Id.*

In the settlement agreement, the Signatory Plaintiffs and each settlement class member agree to release Defendants "and their subsidiaries, affiliates, business units, members, shareholders, and their predecessors and successors, officers, directors, agents, employees and assigns" for "all claims relating to tip distribution practices and any and all other wage and hour claims at the Foxwoods Hard Rock Café, up to the execution of the Agreement that were or could

---

[2] It is unclear what the reference to proportional allocation means. It could be construed to mean that a Signatory Plaintiff or settlement class member could receive more than the amounts listed on Exhibits B and C in the event that the Court does not approve the incentive payment, does not approve the attorneys' fees sought by Plaintiffs' counsel, or if not all of the anticipated settlement class members timely file claims. It appears that is not the intention, however, based on the representation of counsel for Plaintiffs that "[e]ach individual who submits a timely claim form would recover the amount calculated for that individual; unclaimed funds would revert to the Defendants." Doc. No. 63 at 4. **Counsel for the parties should clarify the method of proportional allocation in a supplement to the motion within the time permitted to file objections to this Report and Recommendation**.

have been asserted in this matter . . . , including without limitation, all state and federal claims for wages, penalties, interest, and non-wage compensation, common law claims, and all claims for attorneys' fees, costs and expenses." Doc. No. 65-1 at 13. Defendants "and their subsidiaries, affiliates, business units, members, shareholders, and their predecessors and successors, officers, directors, agents, employees and assigns" release the Signatory Plaintiffs and other members of the settlement class from "all claims arising out of this litigation." *Id.*

The settlement agreement represents that "Named Plaintiff, Opt-In Plaintiffs and Defendants participated in the negotiation and drafting of this Agreement and had available to them the advice and assistance of independent counsel." Doc. No. 65-1 at 15. The parties agree to request that this Court retain jurisdiction to enforce the settlement agreement. *Id.* at 16-17.

## III.    ANALYSIS.

### A.    *Is the Settlement Agreement Fair and Reasonable?*

In *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-55 (11th Cir. 1982), the United States Court of Appeals for the Eleventh Circuit explained that claims for compensation under the FLSA may only be settled or compromised when the Department of Labor supervises the payment of back wages or when the district court enters a stipulated judgment "after scrutinizing the settlement for fairness." *Id.* at 1353. In *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (per curiam),[3] the Eleventh Circuit observed that the FLSA "contemplates that 'the wronged employee should receive his full wages plus the penalty without incurring any expense for legal

---

[3] The Court recognizes, as it has in the past, that the Eleventh Circuit's unpublished opinions represent persuasive authority, rather than binding precedent. *See* 11th Cir. R. 36-2 and I.O.P. 6.

fees or costs.'" *Id.* at 351 (quoting *Maddrix v. Dize*, 153 F.2d 274, 275-76 (4th Cir. 1946)).

Therefore, in any case in which a plaintiff agrees to accept less than his full FLSA wages and

liquidated damages, he has compromised his claim within the meaning of *Lynn's Food Stores*.

1.     The Settlement Amount.

Counsel agree that the Signatory Plaintiffs and other prospective members of the

settlement class have compromised their claims. *See* Doc. No. 63 at 5 ("Plaintiffs' counsel

estimate that the $32,333 to be distributed to class members is slightly more than the total back pay

damages potentially owed . . . going back three years."); Doc. No. 65-1 at 14 ("This Agreement

and settlement are a compromise . . . ."). The compromise was reached after mediation before an

experienced wage and hour mediator. Doc. No. 63 at 5. Whether any amount was owed was

disputed by Defendants. The Signatory Plaintiffs were advised in the settlement agreement of the

proposed $1,000.00 incentive payment to Plaintiff Heath and the proposed payment to Plaintiffs'

counsel. Under these circumstances, it appears that the Signatory Plaintiffs and Defendants believe

that the settlement is a fair and reasonable resolution of the FLSA dispute.

2.     Attorneys' Fees, Costs and Expenses.

The Court must inquire whether the proposed payments to Plaintiffs' counsel are

reasonable to ensure that the amount that Plaintiffs' counsel negotiated for attorneys' fees, costs

and expenses did not taint the amount that Defendants agree to pay to the Signatory Plaintiffs and

other settlement class members. *Silva*, 307 F. App'x at 351.

Only Attorney Schwab seeks fees for her work. She avers that she graduated from

Columbia Law School in 1999. For the last five years she has practiced exclusively employment

law.  Doc. No. 65-2 ¶ 2.  She suggests that $250.00 per hour is a reasonable rate for her work.  This rate is consistent with the hourly rate awarded by this Court to counsel with similar experience in FLSA cases.  Therefore, I recommend that the Court find that the hourly rate is reasonable.

Attorney Schwab represents that the time records she submitted relate solely to work performed for the individuals whose claims are to be resolved under the proposed settlement.  *Id.* ¶ 4.  Those time records reflect 102.3 hours of work, not including the work performed in filing the motions for approval of the settlement agreement.  Doc. No. 65-2 at 4-6.  After review of the description of the work performed and the time expended, I recommend that the Court find that the number of hours worked is reasonable.

Under a normal lodestar calculation, Schwab would receive $25,575.00.  Under the settlement agreement, she will receive, at most, $16,667.00.  Therefore, it appears that the amount paid to Plaintiffs' counsel did not taint the amount that Plaintiffs agreed to accept in settlement of their claims.

3.  Other Considerations.

A final matter to consider is whether additional provisions of the settlement agreement render the settlement unfair.  In *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010), a judge of this Court found that a release rendered a settlement in an FLSA action "both unfair and incapable of evaluation," because "[a]bsent some knowledge of the value of the released claims, the fairness of the compromise remains indeterminate."  In that case, the release read as follows:

> Plaintiff for himself, attorneys, heirs, executors, administrators, successors and assigns hereby waives and releases, knowingly and

> willingly, Defendant, its heirs, executors, administrators, legal
> representatives, parent corporation, predecessor companies, insurer,
> past, present and future divisions, subsidiaries, affiliates and related
> companies and their successors and assigns and all past, present and
> future directors, officers employees and agents of these entities,
> personally and as directors, officers, employees and ages, ("Released
> Parties") from any and all claims of any nature whatsoever Plaintiff
> has arising out of his employment with Defendant, known or
> unknown, including but not limited to [a list of federal, state and
> local laws].

*Id.* at 1347.

In the present case, the release is somewhat narrower. The Signatory Plaintiffs and other settlement class members release the following:

> [A]ll claims relating to tip distribution practices and any and all other
> wage and hour claims at the Foxwoods Hard Rock Café, up to the
> date of the execution of [the settlement agreement] that were or could
> have been asserted in this matter against Defendants and their
> subsidiaries, affiliates, business units, members, shareholders, and
> their predecessors and successors, officers, directors, agents,
> employees and assigns, including without limitation, all state and
> federal claims for wages, penalties, interest, and non-wage
> compensation, common law claims, and all claims for attorneys'
> fees, costs, and expenses.

Doc. No. 65-1 at 13. This release binds each Qualified Claimant and his or her "spouses, children, heirs, assigns, successors and offspring . . . ." *Id.* at 16.

Because the release in the present case is limited to wage and hour claims arising from practices of the Foxwoods Hard Rock Café, Signatory Plaintiffs and other members of the settlement class presumably can determine whether they have any claims that could have been but were not asserted in this case. The settlement agreement also contains a mutual release by Defendants. There is no provision for voiding the settlement agreement or returning monies paid

under it if the release is ruled to be unenforceable in whole or in part, such as those seen in other cases. Under these circumstances, I recommend that the Court find that the release is not the type of "side deal" that undermines the fairness or reasonableness of the settlement.

Subject to the filing of a complete, fully executed settlement agreement, and clarification of the terms of the settlement agreement as discussed herein, I recommend that the Court find that the proposed settlement is a fair and reasonable resolution of a bona fide dispute under the FLSA.

B.    *Incentive Payment to Plaintiff Heath.*

There is no provision for a "representative plaintiff" under the FLSA. As the Eleventh Circuit has observed, the collective action provision of the FLSA "is a fundamentally different creature than the Rule 23 class action. Even if the [FLSA] plaintiff can demonstrate that there are other plaintiffs 'similarly situated' to him, . . . he has no right to represent them." *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003) (per curiam). Because there is no "representative plaintiff" in FLSA collective actions, generally no incentive payment to a named plaintiff in an FLSA collective action is warranted. *See, e.g., Ayers v. SGS Control Servs., Inc.*, Nos. 03 Civ. 9078(RMB), 06 Civ. 7111(RMB), 2008 WL 4185813, at * 5-7 (S.D.N.Y Sept. 9, 2008)(discussion out-of-circuit cases involving incentive payments to named plaintiffs).

Courts have, however, awarded incentive fees to named plaintiffs who establish that they faced substantial risks by participating in the lawsuit and incurred actual expenses during the litigation. For example, in *Su v. Electronic Arts, Inc.*, No. 6:05-cv-131-Orl-28JGG, 2006 WL 4792780, at * 5 (M.D. Fla. Aug. 29, 2006), the named plaintiff testified that he feared that his career would be adversely affected as a result of initiating litigation against his former employer.

He also had to use four vacation days to travel to attend hearings in the case. The Court found this evidence sufficient to support a $10,000.00 incentive fee recommended by all parties to the litigation.

Similarly, in *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005), the Court approved an incentive payment to the named plaintiff in a hybrid Rule 23 class action and FLSA collective action. The court wrote:

> While the majority of reported decisions granting incentive awards arise out of securities litigation, . . . such awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.

*Id.* at 187. In *Frank*, the court found that the named plaintiff had been actively involved in the litigation of the case since its inception and provided counsel with assistance which lead to a favorable settlement for the entire class. The named plaintiff averred that he feared that his role in the case "could deleteriously affect his future employment possibilities." *Id.* The court determined that these facts were "special circumstances" that supported an award of $10,523.37 (8.4% of the settlement fund) as an incentive payment.

In the present case, Schwab avers that Plaintiff Heath was one of the first people to contact her regarding potential claims against the Defendants. He helped to draft the complaint and actively participated in the litigation, including responding to 38 document requests and 15 interrogatories. He submitted an affidavit in support of Plaintiffs' motion for conditional certification of a collective action, and he helped Schwab prepare for mediation. He was a reliable

contact person between counsel and the other members of the settlement class. Doc. No. 65-2 ¶ 3. Further, it appears that the proposed $1,000.00 incentive payment to Plaintiff Heath does not diminish the amount any settlement class member would receive under the formula used to calculate individual settlement amounts. Under these circumstances, the incentive payment to Heath is reasonable.

> C.    *Collective Action Class Certification and Notice.*

In order to certify a collective action at this stage of the case, Plaintiffs bear the burden of establishing that members of the proposed settlement class are similarly situated. *See Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007). The proposed settlement class is composed of the Signatory Plaintiffs and "all other servers and bartenders who worked at the Hard Rock Café at the Foxwoods Casino in Connecticut from May 1, 2008, to June 21, 2009." Doc. No. 63-2 at 1. Because the settlement class is limited to individuals who worked at specific jobs at a single location, the record as a whole supports a finding that the Signatory Plaintiffs and other members of the proposed settlement class are similarly situated.

The Court has the authority to authorize notice to be given to members of the settlement class. *Dybach v. State of Fla. Dep't of Corrections,* 942 F.2d 1562, 1567-68 (11th Cir. 1991). Plaintiffs have submitted a proposed form of notice. Doc. Nos. 63-1.

The proposed notice states that "each eligible individual who timely files a Claim Form will receive a payment based on the hours that he or she worked . . . ." Doc. No. 63-1 at 2. Because the parties have already calculated the amount that each prospective settlement class member will receive, this vague description of the potential recovery is insufficient. Moreover, because it is

contemplated that the settlement administrator will furnish notice directly to each of the 60 prospective settlement class members, it would be appropriate to modify the notice to state the exact amount that the person to whom the notice is directed will receive if a claim form is timely submitted.[4]

The proposed notice also does not adequately describe the extent of the release of claims. It does not specify all of the individuals and entities released and all of the individuals who will be bound by the release. Accordingly, I recommend that the Court require a revised form of notice that sets forth the release language as it appears in the settlement agreement.

## IV. RECOMMENDATION.

As set forth above, I conditionally recommend that the Court **GRANT** Plaintiffs' Renewed Motion for Order Approving Settlement of Collective Action and Approving Notice of Settlement and Opportunity to File Claim Form (Doc. No. 65), only if the parties file the following documents within the time permitted to file objections to this Report and Recommendation, and the Court determines that these additional filings support approval of the motion:

1.    A supplemental memorandum of law addressing the matters raised in the foregoing report, specifically as stated in footnote 2, *supra*;

2.    A settlement agreement signed by Defendants and counsel for the parties;

---

[4] This can be done easily by indicating in the body of the notice that "the amount you will receive under the settlement agreement is set forth in Attachment A to this notice." In this manner, a common notice can be sent to each individual requiring only an individualized attachment.

3.     A signed settlement agreement for Sarah Jane Waltman or a motion seeking leave to have Waltman included as a member of the settlement class who must file a Claim Form to participate in the settlement; and,

4.     A revised form of notice.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully Recommended** in Orlando, Florida on October 28, 2011.

_Karla R. Spaulding_
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE